Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| UNITED STATES OF AMERICA, | NO. MJ19-343 |
| Plaintiff | |
| | **UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION FOR DETENTION** |
| v. | |
| PARK HUNG QUAN, | |
| Defendant. | |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Andrew C. Friedman and Steven T. Masada, Assistant United States Attorneys for said District, files this memorandum in support of its motion to detain Defendant Park Hung Quan pending resolution of the criminal matter.

## I.    INTRODUCTION

On July 29, 2019, Defendant Park Hung Quan was arrested after having been found in possession of more than a dozen firearms and explosive material. The same day, he made his initial appearance in this Court, charged by complaint with the offense of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1). The United States filed a motion for pretrial detention, and now files this

MEMORANDUM IN SUPPORT OF DETENTION - 1
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  memorandum in support, in advance of Quan's detention hearing scheduled for August 1,

2  2019.

3        As discussed below, Quan, a multiple-time felon with a record of violence, poses a

4  significant danger to the community and a risk of non-appearance.  Accordingly, the

5  Court should order him detained.

6  **II.**        **BACKGROUND**

7  **A.**   **Quan's Criminal Background**

8        Park Hung Quan has at least three prior felony convictions, all related to the illegal

9  possession or attempted possession of weapons.  One of those weapons convictions

10  stemmed from his involvement in an attempted murder-for-hire plot here in Western

11  Washington.  More specifically,

12      •     In the early 1970s, Quan, while enlisted in the military, was convicted by

13  court-martial of soliciting the theft of military weapons and attempting to steal military

14  weapons.  According to Pretrial Services, Quan was sentenced to approximately five

15  years in custody at Fort Leavenworth.

16      •     On about November 4, 1983, Quan was convicted of *Felon in Possession of*

17  *Explosives*, in the Western District of Washington, Case No. CR83-00039.  As alluded to

18  above, this conviction arose from Quan's involvement in a contract murder plot, as

19  described in an old Seattle Times article:

20

21 **Three charged with attempted truck bombing**

Three Seattle-area men linked to an attempted truck bombing in Ocean Shores in 1980 have been charged with conspiring to make a firearm out of stolen explosives.

Dick F. Inglis, 50, a self-employed log broker from Bellevue; Jack W. Karr, 54, self-employed, of Seattle; and Park Hung Quan, 31, a West Seattle grocery-store employee, were ordered held on $50,000 bail each yesterday by a federal magistrate in Tacoma.

Named as unindicted co-conspirators in the same indictment were Michael John Shimmin and Barbara Neyman. The conspiracy allegedly occurred between April 1980 and July 5, 1980.

The investigation began when Richard A. Conner, a former Seattle resident, found a four-stick dynamite bomb under his pickup truck when he returned from an Ilwaco fishing trip. The device had malfunctioned, according to the federal Bureau of Alcohol, Tobacco and Firearms.

The motive for the attempted truck bombing was not clear, but a source indicated that it was relat-

ed to the fact that Neyman and Conner were once married.

The indictment said Inglis accompanied Neyman to her Mercer Island bank in June 1980, when she withdrew $1,000. Two days later, she gave the money to Karr, according to the indictment.

Next, Shimmin transferred stolen explosives to Quan, alias "Harry," according to the indictment. In addition to the conspiracy charge, Quan, who has a criminal record, is charged with knowingly receiving explosives which had been shipped across state lines and which he knew or should have known were stolen.

MEMORANDUM IN SUPPORT OF DETENTION - 2
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Quan or a compatriot strapped a bomb, incorporating four sticks of dynamite, to the undercarriage of the target's truck.  The attempted murder failed only because the bomb malfunctioned.

Quan cooperated with the government against his co-conspirators.  As part of his plea arrangement, he was allowed to plead guilty to only the explosives possession charge.  Even after receiving cooperation consideration, Quan received a 10-year custodial sentence.

• On about May 23, 1991, Quan was convicted of *Unlawful Possession of Unregistered Firearm (Machine Gun and Silencers)*, in the U.S. District Court for the Southern District of Texas, Case No. CR91-0041.  Notably, according to currently available records, Quan committed this firearm offense on about January 15, 1991 --- shortly after his release from Bureau of Prisons (BOP) custody and while on federal supervised release for his prior conviction.

## B.   Quan's Current Possession of Firearms and Explosive Material

On July 29, 2019, FBI agents searched Quan's South Seattle residence pursuant to a search warrant relating to the conduct of one of his housemates ("Person 1").  Five co-habitants, including Quan, resided in the modest three-bedroom residence.  As law enforcement was aware, Person 1 was the subject of one or more restraining orders and had made express threats to harm others and herself.  In fact, in late May 2019, Person 1 had threatened to "shoot up" the office of a California social media company.[1]  A copy of a Seattle Police Department report is filed separately under seal as Exhibit A.  Authorities also were aware of Quan's felon status.

Within Quan's bedroom, agents located what can fairly be described as an arsenal of weapons, ammunition, and explosive material, largely unsecured and accessible to his housemates.  More specifically, the more-than-a-dozen firearms included several assault rifles, a sniper rifle, and hand guns.  Some of the guns were loaded, including one with a

---

[1] The company is aware of and reported the threat.

MEMORANDUM IN SUPPORT OF DETENTION - 3
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

high capacity magazine.  Further, some of the guns appear to be illegal firearms (e.g., short-barreled).







MEMORANDUM IN SUPPORT OF DETENTION - 4
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5



6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21



22
23
24
25
26
27
28



MEMORANDUM IN SUPPORT OF DETENTION - 5
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8



9
10
11
12
13
14
15



16
17
18
19
20
21
22



23
24
25
26
27
28

 

MEMORANDUM IN SUPPORT OF DETENTION - 6
*United States v. Park Hung Quan*, No. MJ19-343

Quan's bedroom also contained, among other things, the following:

- bump stocks, which are designed to be attached to semiautomatic firearms in place of conventional stocks, enabling them to fire bullets more rapidly, mimicking a full automatic weapon





- two 37 mm "flare launchers," which can be used to shoot a variety of projectiles



MEMORANDUM IN SUPPORT OF DETENTION - 7
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- high-capacity magazines and a large cache of ammunition





- inert replica grenades, chemical precursors and explosive powder.



MEMORANDUM IN SUPPORT OF DETENTION - 8
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   In a post-arrest interview, Quan told agents that the bedroom and the firearms
2   were his.  He further acknowledged that he knew it was illegal for him to possess such
3   items based on his prior felony convictions.  Quan also stated that he had acquired the
4   bump stocks before they became illegal (thereby implicitly confessing knowledge of his
5   illegal possession).

6   While the five residents were temporarily restrained outside the residence, FBI
7   agents heard Quan say that he had not yet gotten the chance to mix the precursors for
8   "RDX," prompting one of the housemates to say, "shhhhh, shut up."  Shortly thereafter,
9   Quan said that he should have moved the acetone, prompting the same housemate to say,
10  "Shut up, man."  "RDX" is an explosive chemical compound (*see, e.g.,*
11  *https://en.wikipedia.org/wiki/RDX*), and acetone is a commonly-used precursor for
12  explosives (*see, e.g., https://en.wikipedia.org/wiki/Acetone_peroxide*).

### III.    DISCUSSION

13
14  Defendant Quan poses both a significant danger to the community and a risk of
15  non-appearance.  Pretrial Services has indicated that it will recommend detention for
16  Quan.  The United States strongly concurs.

17  **A.    The Legal Standard**

18  18 U.S.C. § 3142(f)(i)(E) provides that the court shall "hold a hearing to determine
19  whether any condition or combination of conditions . . . will reasonably assure the
20  appearance of [a defendant] and the safety of any other person and the community" in
21  any case that "involves the possession or use of a firearm."  18 U.S.C. § 3142(g) provides
22  that, the court

23          shall . . . take into account
24              (1)  the nature and circumstances of the offense charged,
            including whether the offense . . . involves . . . a firearm, explosive,
25          or destructive device;
                (2)  the weight of the evidence against the person;
26              (3)  the history and characteristics of the person . . . and
                (4)  the nature and seriousness of the danger to any person or the
27          community that would be posed by the person's release . . . .
28

MEMORANDUM IN SUPPORT OF DETENTION - 9
*United States v. Park Hung Quan*, No. MJ19-343

1   Each and every one of these factors counsels strongly for detention in this case.  Indeed,
2   it would be difficult to imagine a stronger case for detention.

3   **B.      Danger to the Community**

4            Quan should be detained as a danger to the community.  Considering the
5   § 3142(g) factors:  First, Quan is charged with a firearm offense – possession of one
6   firearm, that was part of a dangerous arsenal.  That arsenal included assault rifles (some
7   of which appear to be illegal), a sniper rifle, and hand guns; stockpiles of ammunition;
8   and high-capacity magazines.  Quan also possessed multiple bump stocks, which serve no
9   purpose other than to enable rapid, automatic-style firing.  Following the recent mass
10  shooting in Las Vegas, where a bump stock allowed a shooter to kill more than 50
11  people, they are illegal to possess.  And, Quan had explosive powders and chemical
12  precursors.  While detained during the search, Quan quipped that he had not yet mixed
13  the "RDX," a highly explosive compound.

14           Second, the weight of the evidence is overwhelming.  Not only were all of these
15  weapons found in Quan's bedroom, but Quan confessed both to possessing the weapons,
16  and to knowing that it was illegal for him to do so.  Third, Quan's history and
17  characteristics confirm that he is a danger.  Quan has three prior firearms and/or
18  explosives convictions.  One involved military weapons, one involved a machinegun, and
19  the most troubling one involved possession of explosives that Quan possessed as part of a
20  murder-for-hire plot.  Many defendants are charged with firearms crimes – Quan is the
21  rare defendant whose criminal history proves his willingness to use those weapons to kill.

22           Fourth, the danger posed to the community cannot be underestimated.  Of note,
23  Quan left his weapons unsecured, accessible to others.  And he did so even though he was
24  aware that his housemate, Person 1, suffered from mental-health issues, and that Person 1
25  had threatened to commit suicide-by-cop and a mass shooting at a corporate campus.
26  Quan's reckless indifference placed countless people and the community at risk.  Quan's
27  own demonstrated willingness to use weapons himself to harm others confirms the
28  danger to the community that would result from his release.  We live in an age in which

MEMORANDUM IN SUPPORT OF DETENTION - 10
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  mass shootings at times tragically seem like a daily event.  Quan not only has

2  demonstrated the willingness to kill others, but he had assembled the arsenal to do so.

3      Nor does it matter that law enforcement has seized the weapons found in Quan's

4  residence.  Quan has demonstrated that he remains undeterred, despite repeated arrests

5  and convictions.  A court martial did nothing to persuade Quan to follow the law.  Rather,

6  not long after his release, he engaged in the murder plot.  Nor did a 120-month federal

7  sentence from this District deter him.  Shortly after his release, and while on federal

8  supervision, Quan was arrested, charged and convicted for possessing a machine gun.

9      Although it is true that more than 25 years have passed since Quan's last

10 conviction, it is almost certain that Quan has illegally possessed guns and/or explosives

11 for a substantial part of that time, given the remarkable size and variety of his arsenal.

12 And it is certain that, if released, Quan would have the ability to acquire additional

13 firearms, thereby posing a serious danger to the community.

14 **C.      Risk of Flight**

15     In addition to being a danger, Quan also poses a serious risk of nonappearance.

16 He has demonstrated no ability to abide by the law, and offered no sound rationale why

17 court-imposed conditions would fair differently.  Quan faces multiple anticipated

18 firearms and explosives charges, as well as possible other criminal violations.  If

19 convicted after trial, particularly given his criminal history, Quan faces a significant

20 custodial sentence.  Given his current age (66), that sentence is even more serious.

21     Moreover, the evidence is strong, if not overwhelming, which contributes to

22 Quan's incentive to flee.  The contraband weapons, explosives, and related items were

23 recovered from Quan's bedroom --- many in plain view.  Quan, in a post-arrest statement,

24 admitted that the firearms belonged to him and that he knew they were illegal to possess.

25     Quan also has no viable release plan, which undermines any realistic community

26 supervision (and contributes to his risk of non-appearance and risk to the community).

27 He cannot return to his residence, as each of the remaining housemates are potential fact

28 witnesses in his criminal case.  For instance, at least one housemate has made statements

MEMORANDUM IN SUPPORT OF DETENTION - 11
*United States v. Park Hung Quan*, No. MJ19-343

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  to the media that the firearms belonged to Quan.  The United States is unaware of any

2  alternative arrangements available to Quan.

3      If released, Quan would have tremendous incentive to flee that cannot be

4  adequately addressed by court-imposed conditions of release.  For instance, as courts

5  have repeatedly recognized, electronic monitoring has many uses, but it does not prevent

6  flight.  *See, e.g., United States v. Townsend*, 897 F.2d 989, 994-95 (9th Cir. 1990) ("Nor

7  does the wearing of an electronic device offer assurance against flight occurring before

8  measures can be taken to prevent a detected departure from the jurisdiction.  When a

9  monitoring device is removed or cut (which is what occurs when individuals flee.

10                    **IV.   CONCLUSION**

11      In short, every one of the § 3142(g) factors weighs heavily in favor of detention.

12  Most significantly, Quan, who has a demonstrated history of willingness to resort to

13  violence, was found in possession of an arsenal suitable for mass killing.  If Quan were

14  released, Quan no doubt could acquire additional weapons, as he has following each prior

15  conviction.  No conditions that the Court can impose adequately could protect the

16  community.  As a result, the Court should order Quan detained.

17      DATED this 31st day of July, 2019.

18
19                              Respectfully submitted,

20                              BRIAN T. MORAN
                                United States Attorney
21
22                               *// s // Andrew C. Friedman*
                                 *// s // Steven T. Masada*
23
24                              ANDREW C. FRIEDMAN
                                STEVEN T. MASADA
25                              Assistant United States Attorneys
26
27                              700 Stewart Street, Suite 5220
                                Seattle, WA 98101-1271
28

MEMORANDUM IN SUPPORT OF DETENTION - 12
*United States v. Park Hung Quan*, No. MJ19-343

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorney of record for the defendant.

*s/ Kathleen M. McElroy*
KATHLEEN M. McELROY
Paralegal Specialist
United States Attorney's Office
700 Stewart, Suite 5220
Seattle, Washington 98101-1271
Phone:  206-553-7970
Fax:      206-553-0882
E-mail: Katie.McElroy@usdoj.gov

MEMORANDUM IN SUPPORT OF DETENTION - 13
*United States v. Park Hung Quan*, No. MJ19-343